The next case, number 25-1443, United States v. Malik D. Parsons. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, James Sultan for Malik Parsons. May I reserve two minutes for rebuttal? You may. Your Honors, this is Malik Parsons' direct appeal from his conviction of drug offenses and resulting 84-month sentence. On appeal, with respect to his conviction, Parsons contends that a testimony deliberately elicited by the government from its key investigator, effectively telling a jury that Parsons was guilty, was improper, that its admission over objection was clear error, and that that error prejudiced Parsons and deprived him of a fair trial. Well, they concede it's error. Yes, Your Honor. Get to the prejudice piece. Well, so with respect to prejudice, yes, Your Honor, the government, to its credit, does concede error. Indeed, this testimony falls within the area that this Court has repeatedly stated the government should not present, going back at least 15 years to this Court's decision in Mises, yet the government keeps doing it over and over again. With respect to prejudice, the government says it's harmless. So there's several reasons why it's not. First, Detective Lattanzio was the government's key witness. Indeed, based on the transcript, literally 80% of the transcript, the testimony at trial, was Lattanzio's testimony. Secondly, his testimony, this testimony in particular, this improper testimony, went to the heart of the case. The defense at trial was that Parsons was merely present with and associated with his co-defendant Bean rather than a co-venturer slash co-conspirator, and Lattanzio's opinion that they were both operating this apartment as a drug distribution location effectively buttressed the government's theory and directly undermined the defense theory. And third, while the government's case against Parsons was admittedly strong, it was not overwhelming. That's the key point, right? I mean, all the rest you say may or may not be true, but if the evidence was overwhelming... I'd lose. Yes, so... Fair enough. I guess, what about it? It just didn't strike me what seemed not overwhelming. Okay, so first, the evidence was obtained in this case, the drug evidence, during a search that was conducted, I think, on August 2nd of 2021. And Parsons had been inside that apartment for less than 20 minutes in the two weeks prior to that search. That's number one. Number two, when the police went into the apartment, there were no drugs or drug paraphernalia in plain view. And third, there was no evidence presented that Parsons' fingerprints were on any of the bags of drugs that were seized. So, I mean, granted, again, the government's evidence was strong, but it's not overwhelming. And the defense that, yes, he was there, he used that apartment with his cousin, he hung out with his cousin there, that is all relevant evidence that was considered by the jury, but it's not overwhelming. Wasn't he seen leaving there and going to do hand-to-hand transactions? He was seen leaving there, and he was seen driving his vehicle with the co-defendant during which, when the government claimed, government agent Lutanzio said that the government observed what they believed to be hand-to-hand transactions. That's true, but there were no photographs of hand-to-hand transactions. There was no photograph of Parsons engaging in hand-to-hand transactions. I mean, the question, I guess, really means overwhelming in whether this court is willing to essentially excuse a clear, deliberate error committed by the government because it's got a strong case. And I submit it should not do so. Was there video of him departing the apartment with baggies? And then I think that they had evidence linking him to disposal of some of those afterward that they recovered? There was, Your Honor. And that also is part of the quantum of evidence that made it a strong case. And so the question, I suppose, it's a continuum. You know, what's strong and what's overwhelming and where does this court come down? That's really a factual determination. But I submit that, again, that the fact that this evidence, which is so clearly improper, was deliberately elicited, should be a factor in whether or not the court just says, yet again, please don't do this again, because that's obviously, without consequences, that's not having an effect on how the government presents these cases. Well, what is it that you think, or how should we approach trying to figure out the difference between strong and overwhelming? It's really a factual determination, Your Honor. I guess the question is whether, you know, would any reasonable, if you take out this evidence, this improper evidence, is the court essentially virtually certain that the defendant would have been convicted? I mean, that's sort of the test that the court has articulated. And I can't, I mean, that's really for the court to determine. Is the erroneous question, was this a stash house, or is it, was it, that's an OK question, but it was that he was involved in the stash house? Was he part of, was he operating the stash house? I mean, that's essentially, was he guilty of the crimes that he was charged with? That's what was elicited, that's what was improper. With respect to the sentencing issues, so the first sentencing issue is that he should have gotten a two-point reduction for having zero criminal history points. The government says that that argument is waived. It is not. He objected in the pre-sentence report. If the government had been accepting the premise of your argument, why wouldn't still it have been permissible to think there was constructive possession, where there was evidence that he was sleeping in that place, and the guns were found in a closet with the clothes in the bedroom where he was sleeping? I mean, you could conclude the other, but I'm not sure why you couldn't conclude constructive possession. So constructive possession requires, number one, knowledge that the firearms were present, and secondly, intent and ability to control and exercise dominion. There was zero evidence presented at trial about those firearms. There was zero evidence presented at sentencing by the government about those firearms. So all we have is that there were two unloaded firearms found in a closed closet, inside clothes. There's nothing tying the specific clothes to Parsons. Bean, the co-defendant, who was found with the drugs, was also using that apartment. So, yeah, could Parsons have known there were guns there? Was there evidence Bean stayed over at the apartment? Yes, he stayed over in the apartment, but that doesn't mean he knew there was a gun. No, Bean. Yes, they both stayed over in the apartment. There was no evidence that Parsons knew that there was a— Was this a one-bedroom apartment? It was a one-bedroom apartment, Your Honor, yes. And the closed closet, there's a picture I put in the addendum. I mean, there's a bunch of clothes in there. One gun was found inside the pocket of a sweatshirt, and one gun was found in a shoebox. Could Parsons have known they were there? Yes. Was there any evidence he knew they were there? No. Could he have intended to exercise control and dominion? Yes. Was there any evidence to support that? No. So it's sheer speculation. That's not constructive possession. If he's staying overnight, presumably he's going to change clothes. Presumably they're stored in the closet. I mean, I don't understand— Well, maybe those aren't his clothes. Maybe those are Bean's clothes. Why would he be going through Bean's clothes? There's no evidence that those clothes that the guns were found in belonged to Parsons, or that he controlled them, or that he knew the guns were there. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record? Yes, Your Honor. Just a minute, please. Court Randall Crum on behalf of the government. Starting with the first issue of the lay opinion testimony, as Your Honors are well aware of the evidence that was very strong, we think overwhelming. It's also important to note the narrowness of the objected to testimony. As he points out, it was a large part of the government's case. In fact, about 110 pages of direct examination of this witness. This is one question and answer. It doesn't present the questions of, like, overview testimony of a course of questioning that sought to identify roles. It is the question of, is the defendant guilty? Yes. That's why we concede that question should not have been asked. It's sort of a classic question too far. You've asked the lead-up questions, and then you ask a question. One witness predominated the whole trial testimony. That's true, but again, this was a sliver. This was a microscopic part of 110 pages of testimony in which he led them very directly. By putting him up as the key witness, building up rapport with the jury over 110 pages, and then at the end you say, and now, friend of all of us, is he guilty? Yes. No, Your Honors, again, this is why we concede this question should not have been asked. But I think, again, in light of the evidence as a whole, it was. But how do we deal with that in the analysis? So I understand you're going to tell me the evidence is strong, and I'm going to let you do that. But if I think this is an important question, how does that fit? Well, I think the ordinary standards of harmlessness apply, which is are we confident that the jury would have reached the same verdict, if that question had not been asked. And I think very clearly it would have. And I think here, again, what's interesting to note is this witness was on the stand a long time. A lot of that was playing videos for the jury to see itself of what was happening, including three videos of him leaving the apartment with baggies in his hand. There's one picture that's in the record at page 264, but there were multiple pictures and videos. It's not vague. These are not little white dots and a question what's in his hand. They are baggies in his hand, the exact same kind of baggies that Bean was seen holding that contained drugs the day he was arrested. So we know, we have a very good idea of what's in those baggies. Those happened at three different times. Then there was also the other evidence the government, your honors, are aware of with respect to his participation in the hand-to-hand distributions, which were on two different occasions surveilled, driving a car in which drugs were handed out after leaving from the apartment. And then there's other evidence, prepaid cell phones, other evidence of his involvement, plus the fact that he, if anything, had a closer connection to the apartment than did Bean because he was the one who stayed over there weekly. Both were there on approximately a daily basis. Both of them had the ability and a key to enter independently, so there's no suggestion, as was tried to create by the defensive trial, that the co-defendant had priority of access, that it was his operation. Nothing supported that. The jury had no basis to find that they stood in any different stead. In fact, the defendant was the one who stayed there overnight weekly and the co-defendant only did so at a much more rarely. So again, you have the evidence of the drugs present in the apartment, the evidence of drug preparation, some very interesting evidence of him changing clothes there. Didn't the co-defendant get busted with possessing drugs, though? The co-defendant got busted possessing drugs, but interestingly enough, as I pointed out, in the same sort of baggies that this defendant was seen exiting the apartment with on three different occasions on videos, which were shown to the jury. So the jury didn't have to make a leap at all to see what was in those baggies. They were taken from the co-defendant, they were tested, and they were found to contain drugs. Baggies looking exactly like them were taken out of the apartment on video by the defendant on three different occasions. He was also seen dusting himself off. There was testimony that was consistent with preparation of drugs and packaging because it generates dust. He was seen sweeping out the apartment as he was leaving. He was seen changing clothes in the hallway. It was also suggestive that he was trying to clean himself up before he left. I mean, there was really about as much evidence as actually finding the drugs on him to suggest that he was involved. And it's important to note that his defense was not that drug dealing wasn't happening there. He agreed it was a stash house. He agreed that drug dealing was taking place there. His sole defense was, I was somehow an unknowing, I was in the wrong place on the wrong time over and over and over again carrying bags that I didn't know what was in them over and over again. And the jury had every reason to reject that defense. So his sole defense went to the heart of the question, the erroneous question that the witness... No, certainly. And that's why we conceded straight up that that was not a question that should have been asked because that placed him in a role with respect to this operation, which was improper. At the end of his brief, the defense counsel makes the point that if we continue to excuse this governmental misbehavior, that they actually have no incentive if we continue to find this to be harmless. Well, I don't think that's true. I mean, we're well aware of that. And we conceded in the brief and the message has been conveyed in respect to this case, the prosecutor in this case, that that question was not an appropriate question. I think, unfortunately, inappropriate questions will occasionally be asked. It was, again, a single question, but it was a question that shouldn't have been asked. And that's why we've conceded it here. And we acknowledge the court will probably point out that it shouldn't have been, as the court rightly should. Do you want me to say anything about the sentencing? On the constructive possession, what do we make of the fact that he was not present as much for the final two weeks as his co-defendant was? And the co-defendant had equal access control over the closet. So how do we infer that this defendant was the one who had constructive possession and control? Well, I think there's two points I want to make there. And the first is that we do think that the question of constructive possession really comes here through a plain error perspective. If not, the issue isn't entirely waived. In fact, as we point out in the brief, the defense counsel was the one both at sentencing and in sentencing memorandum who suggested that the decision about whether he qualified for a zero-point offender would be based on the foreseeability of possession. So the district court and the government were not putting in evidence directly to support constructive possession, although the government pointed out that it believed constructive possession was present. So we think, in a plain error lens, the burden is on the defendant to show that no reasonable view of the record would show that there is not constructive possession here. But we also think the evidence is sufficient to find it. The room where it was found, as has been pointed out by your honors, was the room where he spent more time than the codependent did. The testimony was that he spent, and he conceded, in his affidavit in suppression, stayed there on a weekly basis. The codependent was believed to have stayed there some, not nearly as much. He was seen changing clothes from there, coming in one set of clothes and coming out in different clothes. It inferentially suggests that he was the one who was using the closet. And, again, he conceded joint possession of the drugs and did not contest the enhancement for maintaining a premises. So there was clearly evidence of accesses and control, which he didn't dispute. So what we're left with is simply, is there enough to find that at least he had joint possession of this weapon? And I think where he was the one who was staying there, more than the codependent, where he did not dispute joint possession of the premises as a whole, in the sense of premises for drug distribution, and he was involved in drug distribution, which, as we have pointed out, courts have found gives you a motive to possess weapons. And the jury found that he was. Your preservation argument is that the defense conceded it was the same standard as under the two enhancements? Yes, in fact, and that's why we argued first as waiver, because they affirmatively stated, so the first sentences out of the defense counsel's mouth sentencing is that foreseeability enters into this case two ways, with respect to the firearm enhancement and respect to the zero-point offender. The suggestion that this court knew that the issue was actually constructive possession, there's no support for that in the record. It was directed to make a foreseeability finding that would apply to both. I find the zero-point thing doesn't apply for the same reason. For the same reasons, and the defense counsel said, and my arguments are the same arguments. The judge asked, do you have any other arguments you want to make with zero-point offender? He said no. I guess this is a fine point between waiver and forfeiture. If that's the wrong argument, but the lawyer just doesn't know, doesn't fully appreciate, like I could make this argument, but I'm just wrong about it, do we treat that as waiver or do we treat that as forfeiture? Well, I think the court has viewed it as waiver. If somebody says, do you have any other objections, no. Do you agree with this? Yes. We just take them at their word, even if they misunderstood or misunderstood the law. The defense counsel here seemed to have believed that foreseeability applied to both. They argued it that way. I think they have a very harsh, I mean, I guess it could be fixed in a 2255, but if it's waiver, truly waiver, that my lawyer doesn't know what he's doing means he doesn't even get the benefit of plain error to save him from the lawyer's pretty bad. Well, man, recently in the Rowell case, this court held that even a courtroom closure issue, which is structural error, can be waived by somebody consenting to it or a counsel saying I have no objection to that. They may have had a valid objection. They just didn't appreciate it at the time and didn't make it, but that has been considered to be waiver. Counsel said they made the argument in their pre-sentence filings. Do you disagree with that? Well, in the pre-sentence PSR objections, they state two things. They said there's no evidence that he possessed them or that it was foreseeable that he possessed them. So they made sort of both arguments. Why don't we consider that? I think because, again, we look at it from the perspective of how the case evolved. We could view that as an abandonment when the defense counsel then files a memorandum, a sentencing memorandum saying foreseeability is the test for both of them and then at sentencing says the same thing. So when the district court resolves that on the basis it doesn't say, wait a minute, you ignored my objection based on possession. But, again, in the government's view, all of this is unnecessary because on plain air review it fails for the reason that he can't show that it would be irrational to find on this record that he had constructive possession. The burden's on him to show that a fact finder could not find constructive possession, and I think there's clearly enough that he can't meet that burden and, therefore, it would fail under plain air review anyway. Thank you, Mr. Kron. Thank you. Thank you, counsel. At this time, would counsel for the defense please reintroduce himself on the record? James Sultan for Mr. Parsons. With respect to waiver, Parsons' counsel objected to the lack of the two-point reduction in the PSR. He asked for the two-point reduction in his sentencing memo. He asked for the two-point reduction at the sentencing hearing. He never said, or she, meaning the defense counsel, never said that the test for both was foreseeability. She simply argued for both. It is true she did not make the distinction between the test under 2D1.1 and the test under 4C1.1. Distinction clearly exists. But as this court has said repeatedly, you don't have to state your objection with exquisite precision. She asked for that two-point reduction over and over and over again. She made both arguments, and that's clearly not a waiver, which is a known relinquishment of a legal right going back to Johnson versus Zerbst. If the court wants to treat it as plain error, it is plain error because, as the Supreme Court has said, where there's a mistake made in the guideline calculation, which is what this is. It's failure to give him the two points he was entitled to. Basically, it satisfies the third and fourth prongs of Alano. And I cite those cases in my reply brief. So it was error. It was clear error. And it satisfies the plain error test because it resulted in him getting more points than he should have gotten. As long as there was absolutely no evidence of constructive possession. With respect to constructive possession, Your Honor, yes. They presented no evidence of constructive possession. There were no fingerprints on the firearms that they presented. And basically, it is sheer speculation to say, well, he was staying there somewhere. He was using the closet. He must have known there were guns hidden in some clothes in the closet that was jointly used. This is very different, for example, in this court's case in Silvestri, where the gun was found in a drawer that had the defendant's own prescription bottles in it. Here, there's nothing tying the defendant to those particular firearms. Thank you, Your Honor. But your position is that the first issue was preserved, right? So we don't have to get into waiver or? Yes, Your Honor. It was preserved because defense counsel asked for that two-point reduction at every opportunity that she had. Yes, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.